UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KENNETH JAMES                              CIVIL ACTION NO. 09-cv-1592

VERSUS                                     JUDGE HICKS

JAMES LeBLANC, ET AL                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Kenneth James ("Plaintiff") is a self-represented prisoner housed at the David Wade Correctional Center. He filed this civil rights action against several prison officials based on alleged mistreatment following an inmate work stoppage. The 36 defendants have filed a Motion to Dismiss (Doc. 125) that argues the complaint fails to state a claim on which relief may be granted, invokes qualified immunity, asserts an Eleventh Amendment defense to any official capacity claims, and asserts a limitation on recovery pursuant to 42 U.S.C. § 1997e.

**Voluntary Dismissals (Official Capacity; LeBlanc, Huff, and Sanders)**

The complaint alleged that each defendant was sued in his or her individual and official capacities. Defendants argued in their motion that the official capacity claims for money damages are barred by the Eleventh Amendment. Plaintiff responded in his Memorandum in Opposition (Doc. 144, p. 3) that he waives the official capacity claims. Accordingly, all claims against any defendant in his or her official capacity should be dismissed.

Plaintiff also asks for voluntary dismissal of his claims against Secretary James LeBlanc, Angie Huff, and Leia (a/k/a Lee) Sanders. All claims against those defendants should, accordingly, be dismissed. This leaves 33 defendants.

**The Allegations**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Plaintiff alleged facts in his original complaint (Doc. 1) as well as in amended complaints (Docs. 6 and 59). The Motion to Dismiss complained of a lack of specificity as to which defendants allegedly committed which actions, and Plaintiff responded with another amended complaint (Doc. 151).

Plaintiff alleges that he and 63 other inmates were performing field work in a horse pasture when Sgt. Kenneth Gilbert cited them for engaging in a work stoppage in violation of department rules. Complaint, ¶ 1. Numerous extra security personnel, including all 33 remaining defendants, are alleged to have been called in to secure the site of the alleged disturbance. Once the site was secure, the defendants ordered Plaintiff and the other 63 inmates to kneel on the ground in the pasture so that they could be "fully restrained; both hands and feet handcuffed and shackled behind the back." A large bus arrived, and the inmates were ordered to stand up and get on the bus, which took them back to the prison compound. ¶¶ 3-5.

Once back on the compound, the defendants ordered Plaintiff and the other inmates off the bus and ushered them through the back door of the infirmary building. Inside the infirmary, Plaintiff was examined by defendants Jeffrey Jackson and John Martin, both medical staff personnel, for one to two minutes. He was then ordered by the other remaining defendants to exit the infirmary and kneel upright, three abreast with other inmates, on "hard concrete" in a temporary holding area outside the infirmary building. The inmates were ordered to remain kneeling to await an interview with senior staff members, which would not begin until all 64 offenders were examined by the two medical staff members. ¶¶ 8-9.

Plaintiff alleges that he was forced to kneel on the concrete for six to seven hours, during which time he was constantly told to kneel upright and erect and at all times, or else he would be sprayed with a chemical agent. Plaintiff alleges that he was constantly insulted, harassed, and taunted during the time he was on his knees, and the defendants said that he and the other prisoners were being made to kneel on the concrete as punishment for causing the defendants to work so much and because the prisoners did not follow orders. The prisoners were told by the defendants that the next time they pulled another stunt they should remember what happened to their knees. ¶¶ 12-18, 31.

Plaintiff alleges that, while kneeling on the concrete, he began to feel extreme pain and swelling in his knees, as well as pain and soreness in his shoulders and lower back. When he made the defendants aware of his pain and suffering and need for medical attention, he was laughed at and told to shut up. Plaintiff was not given the opportunity to eat the noon

meal. When he asked about the meal, the defendants told him to shut up. After several hours, Plaintiff asked to use the restroom. The request was denied, and Plaintiff was told that if he wanted to go to the restroom "he could go exactly where he was kneeling." Plaintiff and several other inmates were forced to urinate on themselves where they knelt. ¶¶ 19-24.

The interview process was performed by defendants Jerry Goodwin, Michelle Dauzat, Ray Hanson, Brad Rogers, and Lonnie Nail, who would occasionally come outside from where they were conducting interviews to taunt and harass the inmates. These senior staff supervisors reminded the other defendants at the scene to "make sure that the plaintiff and other 63 offenders remained kneeling erect and did not sit or stand." ¶ 25.

At one point during the period of kneeling, Plaintiff asked medical staff personnel Jeffrey Jackson and John Martin if he could get treatment for the swelling in his knees and pain in his shoulders and back. The medical staffers told Plaintiff that they were not authorized to give him treatment, and Plaintiff should ask security. ¶ 26. After several hours of kneeling, Plaintiff was ordered to stand, which he did with great difficulty. He was then escorted to the security building to begin an interview by senior staff members. ¶ 27.

Plaintiff was escorted into defendant Lonnie Nail's office and again made to kneel. Nail and defendant Brad Rogers conducted the interview and asked Plaintiff questions about the alleged disturbance. The interview took five or six minutes. Plaintiff was ordered to stand, escorted back outside, and made to kneel again on concrete in full restraints to await

the completion of interviews of all 63 other inmates. The process took approximately six to seven hours in total. ¶¶ 27-31.

After the interviews were complete, the defendants ordered Plaintiff and other inmates to stand and proceed to an administrative segregation cell. Defendants directed Plaintiff to enter a cell with another inmate who was involved in the alleged disturbance and told the men to strip naked in front of one another so that they could be searched. Plaintiff complained about stripping in front of the other inmate, and he was told that he did not have a choice and should hurry up if he knew what was good for him. Plaintiff alleged in his original complaint that two unknown prison employees verbally abused and taunted him as he stripped; he alleges in his most recent amended complaint that all 33 remaining defendants engaged in the verbal abuse and taunting. Plaintiff and his cellmate were given a paper gown that was not sufficient to cover the genital area. ¶¶ 35-38.

Officials removed all personal effects, including sheets, mattress, toothbrush, and toilet paper from the cell. The two men were left with an iron bunk and a concrete bunk. Plaintiff did not have any hygiene supplies to clean with after urinating on himself earlier. The strip cell status continued for approximately 24 hours, during which time Plaintiff was embarrassed and afraid of being harmed by his cellmate. ¶¶ 39-44. Plaintiff was told that all inmates involved in the work stoppage were placed on strip cell status as punishment for violating the rules. ¶ 37.

Plaintiff alleges that he suffers from severe chronic pain in his shoulders and lower back and an occasional swelling and stiffness of his knees that he did not suffer from prior to these events. Plaintiff alleges that he now suffers from routine episodes of anxiety, panic, paranoia, and other mental and emotional distress. ¶¶ 50-51.

**Rule 12(b)(6); Qualified Immunity**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). Defendants argue that the complaint does not satisfy these requirements. They also invoke qualified immunity.

An individual defendant is entitled to qualified immunity from claims for money damages unless the facts alleged, taken in a light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right that was clearly established at the time of the violation. See Saucier v. Katz, 121 S.Ct. 2151 (2001). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). In a Rule 12(b)(6) contest, that means the Plaintiff must point to portions of his complaint "that state with factual detail and particularity the basis for the claim which necessarily includes

why the defendant-official cannot successfully maintain the defense of immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

**Excessive Force**

When an inmate shot by a guard during a prison riot claimed excessive force in violation of the Eighth Amendment, the Supreme Court looked to the rule that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 106 S.Ct. 1078, 1084 (1986). The assessment, in the setting of a prison disturbance, had to balance multiple concerns and consider the haste with which officials had to act. The Court held that the assessment of whether measures taken by officials inflicted unnecessary and wanton pain and suffering turned on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id.

The Court later extended this test to all claims where prison officials stand accused of using excessive physical force. Hudson v. McMillian, 112 S.Ct. 995, 999 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 1000. This is true even if the resulting injury is de minimis, because it is the force and not the injury that ultimately counts. Wilkins v. Gaddy, 130 S.Ct. 1175 (2010).

Defendants argue that the complaint does not depict such conduct, and they liken the facts to those in White v. Epps, 411 Fed. Appx. 731 (5th Cir. 2011), in which the dismissal

of a prisoner's complaint was affirmed. The prisoner in that case alleged that, during a prison riot, officials removed all inmates from their cells, conducted a strip search, and forced them to lay down on hot concrete for over an hour, which resulted in the inmate claiming his elbows were bruised and bleeding and that he had a red mark on his head. The Fifth Circuit held that the combination of those relatively minimal injuries, suffered as prison officials worked to restore discipline after a disturbance, did not rise to the level to violate the Eighth Amendment. The Court noted that officials faced with such a riot situation may have to act quickly and decisively so are entitled to wide ranging deference.

The facts in this case, however, are more similar to those presented in Hope v. Pelzer, 122 S.Ct. 2508 (2002). Hope was working on a chain gang in Alabama when he got into an argument with another inmate. Hope was taken back to the prison and handcuffed to a hitching post for two hours, during which time he was offered drinking water and a bathroom break every 15 minutes. His arms were suspended above shoulder height, so they grew tired, and the handcuffs cut into his wrists.

A few weeks later, Hope got into a wrestling match with a guard, which required the assistance of four other guards. Hope was handcuffed, placed in leg irons, and taken from the chain gang's work site back to the prison, where he was again put on the hitching post. The guards made him take off his shirt, so the sun burned his skin. He remained on the post for approximately seven hours, during which time he was given water only once or twice and

was given no bathroom breaks. The guard taunted Hope about his thirst, allowing some dogs to drink but then kicking the cooler over without giving any water to Hope.

The Supreme Court observed that, under the facts alleged by Hope, any safety concerns had long since abated by the time he was handcuffed to the hitching post, as Hope was subdued, handcuffed, placed in leg irons, and taken back to the prison. Despite the clear lack of an emergency situation, the defendants knowingly subjected Hope to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and restricted position of confinement, to prolonged thirst, and deprivation of bathroom breaks. The conduct was held to amount to gratuitous infliction of wanton and unnecessary pain that Supreme Court precedent clearly prohibits. The Court also cited the Fifth Circuit decision, Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974), that held unconstitutional forms of punishment such as handcuffing inmates to the fence and to cells for long periods of time, forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods.

Given the facts alleged, Plaintiff has stated a violation of the Eighth Amendment. The work stoppage, to the extent it gave rise to any security risk, was well in hand with all inmates fully restrained and back at the prison compound. The requirement that the inmates, still restrained, kneel upright for several hours without a bathroom break was wanton treatment not done of necessity to control any misconduct, but as physical punishment for prior conduct. Plaintiff alleges that some defendants told him directly that the inmates were

being forced to kneel as punishment for their rule violation in the field. Defendants are also not entitled to qualified immunity with respect to this claim because, as recognized in Hope, the law forbidding such punishment has long been clearly established.

**Verbal Abuse**

Plaintiff's complaint ends with a listing of nine "causes of action." None of them is based directly on the alleged verbal abuse and harassment mentioned at various points in the complaint, but such alleged verbal abuse is mentioned in the context of describing other claims.

Defendants argue that any claim based solely on verbal abuse and harassment should be dismissed. "It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983." Siglar v. Hightower, 112 F.3rd 191, 193 (5th Cir. 1997). Accordingly, any claim based solely on the allegations of verbal abuse should be dismissed. That does not mean that such abuse cannot serve as evidence relevant to remaining claims.

**Medical Needs**

Plaintiff's complaint, particularly in his second cause of action, alleges that prison officials were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 97 S.Ct. 285 (1976). Defendants did not directly attack on the merits the medical care claim. They did include it among those claims on which they argued Plaintiff did not allege the requisite degree of personal involvement.

Plaintiff alleged in Paragraph 57 of his original complaint that he made aware of his serious medical needs seven named security personnel. In response to the Motion to Dismiss, Plaintiff amended Paragraph 57 to allege that he made aware of his serious medical needs each of the remaining 33 defendants. He does not simply allege that "all defendants" were aware. As with other allegations, Plaintiff lists each of the 33 defendants by name in his allegation. Plaintiff's allegation that he made aware each of the 33 defendants of his medical needs, although perhaps difficult to believe, must be accepted as true for current purposes, and he has offered sufficiently specific factual allegations to withstand the rather modest challenge to this claim that was presented in the Motion to Dismiss.

The court reminded Plaintiff in Doc. 60 that a person is not liable under Section 1983 unless he was either personally involved in a constitutional violation or his acts are causally connected to the violation. The mere presence at the scene or position as a supervisor is usually not enough to give rise to a valid claim. Plaintiff was directed to keep in mind that the assertion of meritless claims against multiple defendants, when perhaps only a few were actually potentially liable, simply served to delay resolution of the claims against the central defendants against whom there might actually be a claim. Plaintiff nonetheless persisted in alleging that he made aware each defendant of his medical needs and that each of them was deliberately indifferent. Those allegations were enough to survive a motion to dismiss, but they are yet to be tested by motion for summary judgment or on the merits. If it is shown that

Plaintiff has alleged claims against defendants for which there is no evidence, he may face the imposition of sanctions.

**Strip Search**

The Fourth Amendment protects prisoners from searches and seizures that go beyond a legitimate penological interest. Searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed. The test for a Fourth Amendment violation requires the balancing of the need for the particular search and the invasion of rights that are a result of the search. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007). For example, a strip and cavity search of a male prisoner, carried out in a non-emergency situation by a female guard, could give rise to a violation. Moore v. Carwell, 168 F.3d 234 (5th Cir. 1999). In Hutchins, the court reversed the dismissal of a complaint that a male officer conducted a strip and cavity search of a male inmate while wearing a lewd smile and in the view of a number of prisoners and a female guard.

Plaintiff alleges that he was required to strip naked in front of one other male inmate. He does not allege the presence of any female officers or even other inmates. He does allege that he was verbally abused and taunted as he stripped, but he does not complain of any physical misconduct related to the search. Plaintiff alleges that prison officials told him that he and the other inmates were being placed on strip cell status as punishment for violating the rules. There is no indication in the complaint that the strip search was based on any reason to believe Plaintiff possessed contraband or some other legitimate penological

objective. Forcing a prisoner to be stripped searched, especially in the presence of others, solely as a humiliating punishment for a rule infraction, would violate the clearly established Fourth Amendment standards discussed above. Accordingly, Defendants are not entitled to dismissal of this claim based on pleadings review.

**Strip Cell Conditions**

Plaintiff alleges that he and his cell mate were kept in paper gowns with an iron bunk and a concrete bunk for approximately 24 hours. He alleges they were without a mattress or bedding, toilet paper, soap, or toothbrush. Plaintiff contends that these conditions violated the Eighth Amendment. Defendants do not specifically address that claim in their motion. They argue that Plaintiff has no basis to complain of a denial of due process in connection with what it characterizes as a classification decision. Plaintiff does present an argument that the placement violated procedural due process, but that claim will be addressed below. The claim at issue here is Plaintiff's contention that the conditions were inhumane and violated the Eighth Amendment's ban on cruel and unusual punishment (which is applicable to the states through the Due Process Clause).

The Constitution "does not mandate comfortable prisons," but conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 101 S.Ct. 2392, 2399-400 (1981). Prison officials must provide humane conditions of confinement, ensuring that "inmates receive adequate food, clothing, shelter, and medical care ... ." Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994).

An inmate must satisfy two requirements to demonstrate an Eighth Amendment violation. First, the deprivation must be, objectively, sufficiently serious, meaning it resulted in the denial of the minimal civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, that being deliberate indifference to inmate health or safety. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999).

The length of confinement should be considered in deciding whether the confinement meets constitutional standards. In Hutto v. Finney, 98 S.Ct. 2565 (1978), the Court stated that a filthy, overcrowded cell might be tolerable for a few days but intolerably cruel for weeks or months. The Fifth Circuit found that inmates kept in a filthy cell for only three days did not make out a violation. Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998). But in Palmer inmates were subjected to conditions lasting less than 24 hours, and the Fifth Circuit reversed summary judgment for prison officials. The conditions in Palmer were, however, much more egregious than those alleged here. Inmates were forced to sleep outside in a field in short sleeve shirts with no bedding or protection from insect bites. The temperature fell below 59 degrees, and the inmates were forced to urinate and defecate in a confined area shared by 48 men. The inmates resorted to digging holes in the dirt and building earthen walls to block the cold wind, while guards wore jackets, sat by a fire, or went to vehicles to run a heater.

The conditions alleged by Plaintiff are that he had an indoor bunk but no bedding or toiletry items for 24 hours. He does not allege that the temperature in the cell block was extreme in any way. He does not allege that the cell lacked a toilet or lavatory. He also does

not allege that any particular harm befell him because of the overnight conditions. Plaintiff's main complaint is that he was embarrassed, humiliated, and shamed by being in the strip cell with another offender while wearing only a paper gown. After considering a totality of the circumstances, particularly the brief duration of the conditions, the undersigned finds that Plaintiff has not alleged facts that present a clearly established violation of the Eighth Amendment. The claim that the stay in the strip cell violated the Eighth Amendment should be dismissed.

**Procedural Due Process**

Plaintiff alleges in his complaint that he was not properly classified prior to being placed in strip cell status for 24 hours. He elaborates on this allegation in his memorandum and presents it as a claim for violation of procedural due process.

A prisoner's due process rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293 (1995). Prisoner Sandin was found guilty of misconduct and sentenced to 30 days disciplinary segregation in a special holding unit. The Court found no liberty interest at issue because discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court. The solitary confinement and segregation did not present a dramatic departure from the basic conditions of the prisoner's sentence. The Fifth Circuit, after Sandin, has found that "administrative segregation, without more, simply does not constitute a deprivation of

a constitutionally cognizable liberty interest." Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996). Absent extraordinary circumstances, administrative segregation, being an incident to the ordinary life of a prisoner, will never be a ground for a procedural due process claim. Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

The prisoner in Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008) alleged confinement to a shared cell for 12 months with permission to leave only for showers, medical appointments, and family visits. The Fifth Circuit found the assignment well within the range of confinement to be normally expected for a prisoner serving a life sentence.

Plaintiff was placed in unpleasant but constitutional conditions for approximately 24 hours. That event, under the Sandin standards, did not give rise to a due process claim. Courts have rejected similar claims that confinement to a strip cell generated due process claims. See e.g., Duncan v. Levenhagen, 2000 WL 557009, *2 (7th Cir. 2000) (placement in strip cell without food for 10 to 12 hours did not impose an atypical and significant hardship); Seltzer-Bey v. Delo, 66 F.3d 961 (8th Cir. 1995) (strip cell for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing; procedural due process claim dismissed); Bone v. Walker, 2010 WL 375320 (C.D. Ill. 2010) (strip cell for eight days, without a mattress or clothing for 24 hours, was not atypical or a significant hardship); Demerson v. Woodford, 2009 WL 498199 (E.D. Cal. 2009) (three days in strip cell did not give rise to due process claim); Dunkley v. Tate, 2007 WL 2900169 (W.D. Va. 2007) (three days in strip cell without clothing or personal property,

with only a smock and mattress, did not present due process claim); and Lloyd v. Briley, 2007 WL 917385 (M.D. Ill. 2007) (strip cell with no sheets, toilet paper, or personal property for 13 days did not give rise to procedural due process claim). Plaintiff's procedural due process claim should be dismissed.

**Section 1997e**

Defendants' final argument invokes 42 U.S.C. § 1997e, which provides that no federal civil action may be brought by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury. Plaintiff has, however, alleged that he suffered severe swelling in his knees and continues to suffer severe chronic pain in his shoulders and lower back with occasional swelling and stiffness of his knees. Furthermore, the outright dismissal of a claim is not in order merely because no physical injury is alleged. The plaintiff may still recover nominal or punitive damages for constitutional violations even if there is no physical injury. Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007). There is no basis at this time to dismiss any claims because of Section 1997e.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 128) be **granted in part** as follows: (1) all claims against any defendant in his or her official capacity should be dismissed; (2) all claims against Secretary James LeBlanc, Angie Huff, and Leia (a/k/a Lee) Sanders should be dismissed; (3) any claim based solely on the allegations of verbal abuse should be dismissed; (4) the claim of an Eighth Amendment violation based on conditions

of confinement in the strip cell should be dismissed; and (5) the procedural due process claim based on assignment to the strip cell should be dismissed. It is recommended that the motion be denied in all other respects.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of November, 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE